UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALISSA AKINS,<br>      Plaintiff<br><br>    v.<br><br>APPRAISAL INSTITUTE, *an Illinois not-for-profit corporation*,<br>      Defendant | No. 25 CV 3341<br><br>Judge Jeremy C. Daniel |

### ORDER

The defendant's motion to dismiss [14; 15] is denied. The defendant shall answer the complaint by August 7, 2025.

### STATEMENT

This matter is before the Court on the defendant's motion to dismiss the complaint for failure to state a claim. (R. 14; R. 15.)[1] The facts below are taken from the complaint and are accepted as true for the purpose of resolving this motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The defendant, Appraisal Institute, is a non-profit organization that, among other things, trains and tests prospective real estate appraisers. (R. 1 ¶¶ 10–14.) State regulatory agencies use the defendant's services to determine whether applicants have satisfied the educational requirements to become licensed real estate appraisers. (*Id.* ¶ 17.) In February 2024, the defendant hired the plaintiff, Alissa Akins—a citizen and resident of Maryland (R. 1 ¶ 5), as Director of Education and Publications. (*Id.* ¶ 22.)

In September 2024, the plaintiff began investigating a potential error on one of the exams. (*Id.* ¶¶ 23–24.) As a result, she discovered that the defendant repeatedly misreported test scores between 2020 and 2024. (*Id.* ¶ 26.) State regulatory agencies relied on that information, resulting in improper licensures. (*Id.* ¶ 26(b).) The plaintiff also identified inconsistencies in the minimum passing scores used by the defendant and its third-party exam administrator, as compared to the minimum scores

---

[1] For ECF filings, the Court cites to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

1

established by state agencies. (*Id.* ¶¶ 27–29.) It is alleged that the defendant knew of some of the discrepancies as early as 2020. (*Id.*)

The plaintiff discussed her findings with the defendant's CEO, John Udelhofen, and the president of the defendant's board, Sandra Adomatis, in October 2024. (*Id.* ¶¶ 30–31.) They instructed the plaintiff to take no action and not discuss the findings with anyone else. (*Id.* ¶ 32.) As a result, the plaintiff asked Udelhofen to remove her signatures from student course completion certificates because "she did not feel comfortable attesting that the certificates were accurate." (*Id.* ¶ 33.) The defendant retaliated by cancelling the plaintiff's attendance at a planned work-related conference. (*Id.* ¶ 34.) Udelhofen also sent the plaintiff a message informing her that he was preparing a separation package for the plaintiff because Udelhofen believed their Vice President, Craig Steinley, would "make it hell for [her] as long as [she] stay[ed]." (*Id.* ¶¶ 35–37.) The plaintiff reported this message and the test scores issues to the defendant's human resources department the next day. (*Id.* ¶ 38.) Afterward, Udelhofen "began criticizing [the p]laintiff's work, reassigning [her] responsibilities, and generally undermining [the p]laintiff's authority with her team." (*Id.* ¶ 39.) The defendant fired the plaintiff on December 10, 2024. (*Id.* ¶ 40.)

The plaintiff brings two claims: a violation of the Illinois Whistleblower Act ("IWA"), 740 ILCS 174/1 *et seq.* (Count 1), and an Illinois common law retaliatory discharge claim (Count 2). (*See generally id.*) The defendant moves to dismiss both claims with prejudice. (R. 14.) Although neither party raises the issue, "[i]t is the responsibility of a court to make an independent evaluation of whether subject matter jurisdiction exists in every case." *Foster v. Hill*, 497 F.3d 695, 696–97 (7th Cir. 2007); *see also Evergreen Square of Cudahy v. Wis. Hous. & Econ. Dev. Auth.*, 776 F.3d 463, 465 (7th Cir. 2015) ("[Pa]rties cannot confer subject-matter jurisdiction by agreement, and federal courts are obligated to inquire into the existence of jurisdiction *sua sponte*.") (citations omitted). The plaintiff is a citizen of Maryland, the defendant is an Illinois corporation, and there is no dispute that the amount in controversy exceeds $75,000. The Court therefore finds that jurisdiction is proper under 28 U.S.C. § 1332(a)(1).[2]

## **Legal Standard**

To survive a motion under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *O'Brien v. Village of Lincolnshire*, 955 F.3d 616, 621–22 (7th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl.*

---

[2] "Federal courts hearing state law claims under diversity or supplemental jurisdiction apply the forum state's choice of law rules to select the applicable state substantive law. . . . When no party raises the choice of law issue, the federal court may simply apply the forum state's substantive law." *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014).

*Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The Court "must draw all reasonable inferences in the plaintiff's favor." *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). But the Court does not have to accept as true "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663.

In addition, if the complaint alleges fraud, it "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "A claim that 'sounds in fraud'—in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). If implicated, the pleading "ordinarily requires describing the 'who, what, when, where, and how' of the fraud." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011) (quoting *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011)).

## Analysis

First, the defendant argues for dismissal because the complaint "failed to plead fraud with the specificity required under Fed. R. Civ. P. 9(b)." (R. 14.) Specifically, the defendant argues the complaint does not satisfy Rule 9(b) because it fails to allege that "anyone at [Appraisal Institute] knew of errors" or that "anyone was damaged because of purported reliance on errors." (R. 15 at 5–6.) The plaintiff disagrees, arguing that Rule 9(b)'s heightened pleading standard does not apply to her claims. (R. 21 at 3.) The Court agrees with the plaintiff.

The defendant correctly points out that the complaint is "pepper[ed] . . . with allegations of fraud." (R. 15 at 5.) Courts disfavor this type of pleading, and Rule 9(b) typically serves as a safeguard against unnecessary allegations of fraud. *See, e.g.*, *Borsellino*, 477 F.3d at 507 (holding Rule 9(b) applied because "the appellants' opening brief [was] riddled with references to fraud, showing that this theory pervade[d] their entire case"); *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999) (reasoning that the higher standard of fraud pleading is warranted "because public charges of fraud can do great harm to the reputation of a business firm or other enterprise").

Nonetheless, Seventh Circuit precedent is contrary to the defendant's position. In *United States ex rel. Sibley v. University of Chicago Medical Center*, the Seventh Circuit "join[ed] the other circuits" in holding that employment retaliation claims under the federal False Claims Act ("FCA"), 31 U.S.C. §§ 3729–33, "need not be pleaded with particularity under Rule 9(b)." 44 F.4th 646, 662 (7th Cir. 2022). Similar to the IWA and Illinois common law retaliatory discharge claims, the FCA's "whistleblower provision protects an employee who warns her employer that the employer is making false claims" and is thus defrauding the United States

3

Government. *Lam v. Springs Window Fashions, LLC*, 37 F.4th 431, 436 (7th Cir. 2022). "To recover, a former employee must prove that she engaged in protected conduct[, such as reporting fraud,] and was fired because of that conduct." *Sibley*, 44 F.4th at 661. Thus, even though an FCA retaliation claim may depend on the plaintiff's reporting of fraud, the claim itself "does not allege fraud." *Id.* at 662. "It is a retaliation claim similar to those that plaintiffs bring under federal anti-discrimination statutes, such as Title VII. Rule 9(b) does not apply to these types of retaliation claims." *Id.*

"The [IWA] is similar[ to the FCA], but uses different phraseology." *See United States ex rel. Gill v. CVS Health Corp.*, No. 18 C 6494, 2024 WL 3950211, at *31 (N.D. Ill. Aug. 26, 2024). Under the IWA, "[a]n employer may not take retaliatory action against an employee for refusing to participate in an activity that the employee has a good faith belief that such participation would result in a violation of a State or federal law, rule, or regulation." 740 ILCS 174/20. To prevail, "a plaintiff must establish that (1) she refused to participate in an activity that would result in a violation of a state or federal law, rule or regulation and (2) her employer retaliated against her because of the refusal." *Young v. Alden Gardens of Waterford, LLC*, 30 N.E.3d 631, 643 (Ill. App. Ct. 2015). Like the FCA retaliation claim described in *Sibley*, an IWA claim is based on retaliation, not fraud. The plaintiff does not need to plead that the defendant actually committed fraud, only that she had a good-faith belief that fraud occurred.

Additionally, Courts in this and other districts have examined IWA under Rule 8's standard, not Rule 9(b). *See, e.g.*, *Makela v. Apex Hospice & Palliative Care, Inc.*, No. 24 C 06920, 2025 WL 343464, at *1–2, *6–7 (N.D. Ill. Jan. 30, 2025) (applying Rule 8's standard and holding that the plaintiff "plausibly states a retaliation claim under the IWA" in a case involving hospice fraud); *Gill*, 2024 WL 3950211, at *32 (noting that "Rule 8 is not the most demanding standard" in dismissing a fraud-related IWA claim); *United States ex rel. McGinnis v. OSF Healthcare Sys.*, No. 11 C 1392, 2014 WL 378644, at *9 (C.D. Ill. Feb. 3, 2014) (declining to apply Rule 9(b)'s pleading standard to a retaliation claim under the IWA because the "pleading sufficiently convey[ed] that Plaintiff thought submitting the claims would constitute fraud.").

The same reasoning applies to the Illinois common law retaliatory discharge claim. Under Illinois law, "[t]o sustain a cause of action for retaliatory discharge, an employee must prove: (1) the employer discharged the employee, (2) the discharge was in retaliation for the employee's activities (causation), and (3) the discharge violates a clear mandate of public policy." *Michael v. Precision All. Grp., LLC*, 21 N.E.3d 1183, 1188 (Ill. 2014). Like the FCA retaliation claim in *Sibley*, and the plaintiff's IWA claim here, a retaliatory discharge claim does not allege fraud, only retaliation. *See, e.g.*, *Makela*, 2025 WL 343464, at *1–2, *6–7 (N.D. Ill. Jan. 30, 2025) (applying Rule 8 pleading standard to the Illinois common law retaliatory discharge claim based on hospice fraud). The Rule 8 pleading standard therefore controls

4

because "Rule 9(b) does not apply to these types of retaliation claims." *Sibley*, 44 F.4th at 662. As a result, the Court rejects the defendant's argument that the complaint should be dismissed for failing to meet Rule 9(b)'s heightened pleading standard.[3]

Regarding the Illinois common law retaliatory discharge claim, the defendant makes an additional argument that the plaintiff "failed to identify any clear mandate of public policy that . . . her termination violated." (R. 14.). "While there is no precise definition of what constitutes clearly mandated public policy, a review of Illinois case law reveals that retaliatory discharge actions have been allowed . . . where an employee is discharged in retaliation for the reporting of illegal or improper conduct, otherwise known as 'whistleblowing.'" *Michael*, 21 N.E.3d at 1188. Suspected illegal conduct "report[ed] to superiors in a company as well as to outside authorities is protected." *Stebbings v. Univ. of Chi.*, 726 N.E.2d 1136, 1145 (Ill. App. Ct. 2000).

The plaintiff alleges exactly that. According to the complaint, the defendant punitively fired the plaintiff after she reported to her supervisor what she believed to be fraudulent conduct. (R. 1 ¶¶ 47–55.) The Illinois Supreme Court has said that a clear mandate of public policy exists in cases of this nature. *Michael*, 21 N.E.3d at 1188.

For the foregoing reasons, the Court denies the defendant's motion to dismiss.

Date: July 9, 2025

JEREMY C. DANIEL
United States District Judge

---

[3] The defendant did not make any argument in the alternative that the complaint fails to state an IWA claim under Rule 8. It is not the duty of the Court to make parties' arguments for them. *See Tyler v. Runyon*, 70 F.3d 458, 466 (7th Cir. 1995).